```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x

 LAURA PAPALIBERIOS,

                    Plaintiff,           MEMORANDUM & ORDER
                                         23-CV-8661 (EK)(AYS)

         -against-

 MOUNT SINAI HEALTH SYSTEM, INC., and
 MOUNT SINAI SOUTH NASSAU,

                    Defendants.

--------------------------------------x
```

`ERIC KOMITEE, United States District Judge:

Laura Papaliberios, who was a patient-facing nurse, is suing her former employers, Mount Sinai Health System and Mount Sinai South Nassau Hospital. She claims that the defendants unlawfully discriminated against her because she refused — on religious and disability grounds — to follow New York State's Covid-19 vaccine requirement for healthcare professionals. She brings federal claims for religious discrimination, disability discrimination, and a hostile work environment, along with analogous state-law claims. The defendants now move to dismiss the complaint under Rule 12(b)(6). For the reasons outlined below, that motion is granted.

## I.  Background

The following facts are drawn from the complaint, and are presumed true for purposes of this action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).[1]

Papaliberios was a nurse at Mount Sinai South Nassau until November 22, 2021. *See* Compl. ¶ 17, ECF No. 1. Mount Sinai South Nassau was part of the Mount Sinai Health System, and adopted various "policies, work requirements, workplace mandates[,] and human resources policies" used throughout the Mount Sinai Health System. *Id.* ¶¶ 14-16. In September 2021, the hospital implemented New York's Covid-19 vaccine requirement, which required that nurses (and other healthcare professionals) be vaccinated. *Id.* ¶ 19.

Shortly after the hospital announced the vaccine requirement, Papaliberios sought medical and religious exemptions. *Id.* ¶ 22. The requested medical exemption was predicated on her "diagnosed fertility issues." *Id.* ¶ 31. Papaliberios sent the hospital "information" about her fertility issues, along with NIH-published risk assessments of the vaccine's possible harms to fertility. *Id.* ¶ 34. The hospital said it would submit her request to its medical committee and let her know the outcome. *Id.* ¶ 35. Papaliberios' request for

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

a religious exemption was predicated on the assertion that her Christian beliefs did not allow her to receive a vaccine that used fetal material in its development. *Id.* ¶¶ 42, 47. She proposed instead to wear a mask, take weekly Covid-19 tests, and socially distance. *Id.* ¶ 51.

The hospital denied both requests. *Id.* ¶ 22.

After it announced the vaccine requirement, the hospital posted a clock that counted down the minutes to the requirement's implementation, and sent messages urging employees to get vaccinated. *Id.* ¶¶ 25-28. The hospital fired Papaliberios in November 2021 for non-compliance once the mandate came into effect. *Id.* ¶ 29.

## II. Legal Standard

On a motion to dismiss under Rule 12(b)(6), the Court "must take the facts alleged in the complaint as true, drawing all reasonable inferences in [the plaintiff's] favor." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and threadbare "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

3

## III. Discussion

Papaliberios brings claims for religious discrimination and hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII"), and for disability discrimination under the Americans with Disabilities Act of 1990 ("ADA"). She also brings analogous state-law claims under the New York State Human Rights Law ("NYSHRL").

### A. The Religious Discrimination Claim

To plead a Title VII religious discrimination claim, a plaintiff must plausibly allege that she (1) "held a bona fide religious belief conflicting with an employment requirement"; (2) "informed [her] employer[] of this belief"; and (3) faced an adverse employment action for "failure to comply with the conflicting employment requirement." *See Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001). An employer does not violate Title VII, however, if it can show that accommodating the employee's religious belief would cause it to "suffer an undue hardship." *See Groff v. DeJoy*, 600 U.S. 447, 457 (2023). An undue hardship exists "when a burden is substantial in the overall context of an employer's business." *Id.* at 468. An undue-hardship defense "may be raised by a pre-answer motion to dismiss . . . if the defense appears on the face of the complaint." *D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023).

4

Second Circuit precedent forecloses Papaliberios' religious discrimination claim.  In November 2021, New York law required covered healthcare personnel in patient-facing roles — like Papaliberios — to receive Covid-19 vaccinations.  N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61(a)(1), (c)-(d) (2021).  The applicable regulation did not include a religious exemption.  *Id.* at § 2.61(d).  So, a hospital could not grant a religious exemption without breaking state law.  *See We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 292 (2d Cir. 2021), *clarified*, 17 F.4th 368 (2d Cir. 2021).  And an accommodation that forces an employer to violate state law works an undue hardship under *Groff*.  *D'Cunha*, 2023 WL 7986441, at *2-3.  Indeed, the Second Circuit has held, in three separate post-*Groff* cases, that granting religious exceptions to the New York vaccine requirement would have created undue hardship for hospitals.  *See id.; Does v. Hochul*, No. 22-2858, 2024 WL 5182675 (2d Cir. Dec. 20, 2024); *Russo v. Patchogue-Medford Sch. Dist.* No. 24-378, 2025 WL 610302 (2d Cir. Feb. 26, 2025).  Thus, Second Circuit precedent bars Papaliberios' religious discrimination claim as a matter of law.

B.  **The Disability Discrimination Claim**

A plaintiff may bring an ADA disability discrimination claim "based . . . on adverse employment actions [or based] on failures to accommodate."  *McMillan v. City of New York*, 711

5

F.3d 120, 126 (2d Cir. 2013).  Although the two theories are related, they are conceptually distinct.

To make out a *prima facie* case of disability discrimination based on adverse employment actions under the ADA, a plaintiff must plead that:

> (1) the employer is subject to the ADA, (2) the [plaintiff] is disabled or is perceived to be disabled as defined by the ADA, (3) the [plaintiff] is qualified to perform the essential functions of the job, with or without reasonable accommodations, and (4) the [plaintiff] suffer[ed] an adverse employment action because of [her] disability.

*Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 166 (2d Cir. 2024).

The standard for a failure-to-accommodate claim is slightly different.  To state such a claim, a plaintiff must allege (1) that she is a person with a disability under the ADA, (2) that her employer knew about her disability, (3) that "with reasonable accommodation, [she] could perform the essential functions of the job at issue," and (4) that her employer refused such accommodations.  *McMillan*, 711 F.3d at 125-26 (quoting *McBride v. BIC Consumers Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)).

The key distinction between the two theories is that an adverse-employment-action claim considers whether the plaintiff could perform her job duties *even without* a reasonable accommodation.  By contrast, a failure-to-accommodate claim asks

6

if the plaintiff could perform her job duties *if she received such an accommodation*.

Here, Papaliberios' complaint invokes both theories. Compl. ¶ 95. However, she fails to plead at least two elements common to both theories — namely, the existence of a disability and her qualification for the job. She also fails to plead that she was dismissed because of her disability, which further undermines her adverse-employment-action theory of discrimination. So, her disability discrimination claim must be dismissed.

1. <u>Papaliberios Has Not Pled a Cognizable Disability</u>

The ADA defines a disability as an "impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The key word is "substantially." Courts regularly dismiss complaints that do not specify the nature, duration, or frequency of a disabling condition, and therefore do not permit a court to determine if the alleged disability is substantially limiting. *See, e.g.*, *Perez v. N.Y. Presbyterian Med. Ctr.*, No. 23-CV-6152, 2024 WL 1514216, at *5 (S.D.N.Y. Apr. 8, 2024) (dismissing an ADA claim containing no allegations regarding the impairment's frequency, severity, or duration or how it impacted a major life activity); *DeVita v. Mt. Sinai Hosp.*, No. 22-CV-9826, 2024 WL 3046121, at *7 (S.D.N.Y. June 18, 2024) (dismissing ADA claim where the plaintiff did not plead

facts suggesting their heart condition limited a major life activity).

Reproduction is certainly a major life activity, the substantial impairment of which constitutes a disability. *Bragdon v. Abbott*, 524 U.S. 624, 638 (1998). The bar to plead a substantial impairment is not high, and the definition of disability should be construed "in favor of broad coverage." 42 U.S.C. § 12102(4)(A). However, superficially alleging "fertility issues" is not enough. The plaintiff still must allege facts illustrating how obstacles to fertility impaired the major life activity of reproduction. *Compare Lasile v. Syneos Health US, Inc.*, No. 22-CV-2472, 2022 WL 22380890, at *2-*3 (N.D. Ga. Oct. 11, 2022), *report and recommendation adopted*, 2022 WL 249498 (N.D. Ga. Nov. 4, 2022) (plaintiff who alleged that her infertility required her to undergo medical treatment twice a year and to receive IVF adequately pled a disability), *with Abel v. NYC, Human Resources Admin.*, No. 10-CV-0295, 2011 WL 812309, at *5 (S.D.N.Y. Mar. 3, 2011) (plaintiff who alleged that she had "uterine fibroids," but stated only that the condition was a "surgical condition" that "required her to take leave," did not adequately plead a disability).

Here, Papaliberios alleges vague and undefined "fertility issues" without any additional factual content. The complaint fails to describe the nature of the fertility issues,

8

the extent to which they might limit reproduction, or the interplay between these issues and the vaccine requirement. As such, the complaint does not explain the alleged disability with enough detail for the Court to determine if it is substantially limiting. *See Perez*, 2024 WL 1514216, at *5. This alone justifies dismissal of the disability discrimination claim. However, for the sake of completeness, the Court addresses two other deficiencies in Papaliberios' claim.

   2. Papaliberios Fails to Plead That She Was Qualified for Her Position in Light of the Vaccine Mandate

As noted above, Papaliberios had to allege either that she was qualified for her position even absent a reasonable accommodation (under an adverse-employment-action theory), or that she *would* have been qualified if she had received one (under a failure-to-accommodate theory). *See McMillan*, 711 F.3d at 125-26 (distinguishing between adverse-employment-action and failure-to-accommodate theories of disability discrimination). She has not done either.

Vaccination is a proper "condition of employment in the healthcare field." *We The Patriots*, 17 F.4th at 294. Papaliberios refused Covid-19 vaccination — an essential qualification for patient care in New York at the time of her firing. Thus, she was unqualified for her position once the vaccine mandate came into effect. And she would have remained

9

similarly unqualified even if the hospital system had defied state law and "accommodated" her by allowing her to work in direct patient care unvaccinated. *See id.*; *D'Cunha v. Northwell Health Sys.*, No. 22-CV-988, 2023 WL 2266520, at *6 (S.D.N.Y. Feb. 28, 2023), *aff'd*, 2023 WL 7986441 (2d Cir. Nov. 17, 2023) (medical resident who declined Covid-19 vaccination on medical and religious grounds was not plausibly qualified for her position once her employer's vaccine requirement came into effect). This is another basis on which her disability discrimination claim must be dismissed.

   3. Papaliberios Fails to Plead That the Defendants Dismissed Her Because of Her Disability

A plaintiff bringing a disability-discrimination claim need only plead "plausible support" for an inference of discriminatory motivation. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). The plaintiff can identify such an inference by pointing to, for example, disparate treatment of similarly situated employees, favorable treatment of employees outside her protected group, or degrading criticism of members of her protected group. *See Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015).

Papaliberios has not cleared this (relatively low) bar. She never alleges, for example, that her hospital supervisors made negative remarks about her alleged disability.

10

She does not identify a similarly situated employee who was granted a vaccine exemption. And she does not allege that non-disabled employees received exemptions that disabled employees did not. At bottom, no allegation in the complaint connects the hospital's enforcement of a generally-applicable state law with an intent to discriminate against disabled employees. Papaliberios therefore fails to make out a *prima facie* case of disability discrimination under either theory discussed above.

**C. The Hostile Work Environment Claim**

A hostile work environment claim arises when a plaintiff's workplace is "permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 604 (2d Cir. 2006). Incidents must be "more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 75 (2d Cir. 2001), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). A plaintiff must also connect the alleged conduct to her membership in a protected class. *See Patane v. Clark*, 508 F.3d 106, 113-14 (2d Cir. 2007).

Papaliberios alleges only two facts in support of her hostile work environment claim: the hospital's installation of a

11

countdown clock, and the hospital's reminders to comply with the vaccine requirement. These facts are insufficient to support a hostile work environment claim.

At the outset, Papaliberios fails to plead that the hospital's conduct was related to her membership in a protected class. She does not suggest that the hospital system singled out disabled or Christian employees, or that it engaged in behavior that constituted a special insult when directed at them. *See Patane*, 508 F.3d at 113 (a plaintiff must plead that the allegedly hostile conduct creates hostility "because of" the plaintiff's protected class); *see also Guzman v. City of New York*, 93 F. Supp. 3d 248, 263-64 (S.D.N.Y. 2015) (dismissing claim where plaintiff failed to link the allegedly hostile conduct with her membership in a protected class).

Further, the installation of a reminder clock is a far cry from the severe or pervasive harassment necessary to state a hostile work environment claim. *See, e.g.*, *DeVita v. Mt. Sinai Hosp.*, No. 22-CV-9826, 2024 WL 3046121, at *8 (S.D.N.Y Jun. 18, 2024) (yelling at an employee to quit if they did not get vaccinated, and mocking their request for medical exemption, not sufficiently pervasive). Indeed, for a single event to rise to the level needed to establish a hostile work environment, it must be "extraordinarily severe." *Banks v. GM, LLC.*, 81 F.4th 242, 263 (2d Cir. 2023). In *Banks*, the Second Circuit noted

12

that examples of such severe single events have included the placement of a noose at a black employee's desk, the use of the "N word" to refer to a black employee, and an obscene tirade delivered publicly. *Id*. at 264-66. The placement of vaccine-countdown clock is not comparable to these examples. Accordingly, the hostile work environment claim must be dismissed.

**D.   The State Law Claims**

A court may decline supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367. Because there are no remaining federal claims in this action, and Papaliberios does not invoke diversity jurisdiction, the Court declines supplemental jurisdiction over Papaliberios' state-law claims. Those claims are therefore dismissed without prejudice. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 39-40 (2025).

**IV.   Conclusion**

For the foregoing reasons, the defendants' motion to dismiss is granted in its entirety. The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

13

                                           <u>/s/ Eric Komitee</u>
                                           ERIC KOMITEE
                                           United States District Judge

Dated:     March 31, 2025
             Brooklyn, New York